1957, Caritas Technologies v. Comcast Mr. Timbers Thank you, Your Honor. My name is Kerry Timbers. I represent Caritas. The Court should vacate the lower court judgment because of a fundamental problem with the Court's construction of telephonic connection. The Court replaced the claim language, at least one conferee telephone device, with its own language, two telephone devices. And by doing so, we end up with a construction that excludes every embodiment in the patent from the claims. Well, that's only if we construe telephone devices to only be telephones and not to include bridges, right? That's correct. If we construe telephone devices to include bridges, switches, etc., then the embodiments are all included in the construction. The embodiments are included in the construction, and so is the Comcast system's embodiment. And if that's the case, the 54B judgment has no basis. The judge made the 54B judgment on the basis of the fact that the Comcast system does not have a circuit switch connection between two phones. And when you look at the judgment, it relies upon three facts. All three facts relate solely to the IP, the internet protocol portion of the Comcast system. And then it says, thus, without even looking at the circuit switch part, thus there is no telephonic connection between two telephone devices. When you look at the District Court's opinion, you can see that it was using telephone devices and telephones completely interchangeably. When it talked about the difference between the parties, it in fact used the following terms interchangeably. It said, quote, between two telephone devices, quote, end-to-end connection between two telephones, and, quote, between two telephones, conferee-to-conferee. All on the same page in the opinion, all to describe Comcast's position. That is a phone-to-phone decision, not a switch-to-phone decision. And it further said that every connection must be, quote, between conferees. So it made clear that it considered telephone devices to be telephones. Another place where it does this is, there's actually two terms at issue here, a related term, connection status information. And the connection we're talking about is the telephonic connection. But when it defined what connection status information was, it said between telephones. And it didn't try to distinguish between those two things. It used between telephones and between telephone devices. And it would point out that the word telephone devices does not come from the party's briefs below, and it doesn't come from the party's arguments below. Well, yes, I mean, to a certain extent, didn't Comcast's brief in the Markman, I mean, the district court adopted Comcast's proposed construction, correct? Yes. And in that construction, didn't they clearly, I mean, I don't have it in front of me, but there was a footnote in which they used the term devices, and they defined it. They did not, Your Honor. They said by telephones we mean. They did not say by telephone devices we mean. They said by telephones we mean. And they further said that by those things we mean endpoints of a call. Not endpoints of a connection, but endpoints of a telephone call. What's this precise reason that the definition of telephonic devices means so much? Show us how that affects the accused device. Yes, Your Honor. If I may point to the bottom board, we have the Comcast digital voice system, and over on the end, and this is also in both Comcast brief and our brief, it is, just a moment. You will find this opposite page 12 in our brief. You have a phone over at the left side, which is connected to something called an MTA. The MTA is a computer. It is not connected to the public switch telephone network. It talks to something called a media gateway by IP. The media gateway becomes the question here? Yes, Your Honor, it does, because the question is. But it's packet switched on one side and circuit switched on the other. Exactly. Exactly right. You could say half of it is IP and half of it is circuit switched. The call is half and half. But it doesn't matter whether you're dealing with fax transmission or other device, does it? Yes, it does. The claim says you set up a telephonic connection for a conference among conferees. Yes. A fax machine would not be part of that. That was why I shared the question as to why it's so significant what the devices are, unless you're talking about the internet connection. What is significant, Your Honor, is whether it is telephones, as we believe the court was clearly saying it's conferee to conferee, end to end, phone to phone, or whether you can include intermediate devices, devices between the phones, and the intermediate devices that you would find are switches, which is exactly what Keratos was arguing below. We were arguing below that the specification shows a switch to phone connection. Comcast said, no, that must fail. In fact, the district court quoted Comcast on that point, saying conferee to switch, quote, must fail, because there is only a, quote, single connection between two telephones. That's Comcast talking, and that's the district court repeating that in its own opinion, saying that Keratos's position is switch to phone, switch to phone, intermediate phone, which we see in the Comcast digital voice system. Based on your construction of telephonic connection, can a conferee contact a conference over an IP network? Not the conferee that is required in the claim. The conferee, the connection in the claim has to be a circuit switch connection, and therefore, and that's why it says at least one conferee. The claim requires that we have a connection, telephonic connection, quote, to at least one conferee, so that at least one conferee has to be in the conference by the means required by the claim. Other conferees could come in different ways. For example, you could dial in. How other conferees get there is not relevant to their claim because their claim is focused on the one conferee, the at least one conferee. But the description of the preferred embodiment says it will be noted that the telephones are independent of the Internet network. Yes, in the preferred embodiment, that's true. But you're saying that if they're independent from the Internet network, it's still covered by the claim. Yes, and in fact, there's another embodiment in which one comes in through the circuit switch network and one comes in through VOIP. That's the third embodiment. Really? Yes, Your Honor. It's in column four, Your Honor. Almost this entire discussion in column four talks about bringing in Column four is the first embodiment. Column five is the third embodiment, right? Well, actually, the way these were added, Your Honor, was that the first embodiment is basically shown in column two and column three in table one. And then table one also forms the basis of the embodiment that was added in column five in 1998, and then... Wasn't the embodiment described in column four the one that was added in 1998? It was added in 2000, Your Honor. Okay, it was added in 2000, and you got a priority date of 1996 for this patent, correct? Yes. There has not been a decision below about what the priority date is. Our position is that it's 1996. It wouldn't be a little problematic if we were to rely on reversing the district court's opinion on preferred embodiment that was added in 2000 when assuming that you're counting on getting a priority date of 1996? No. The reason is that the information in that, the stuff that was added in 2000, has a basis in the provisional that was filed in 1996. The provisional specifically talks about you can use either the circuit switch network to get the compres in, or IP, or both. So the provisional has that information. This information is added to it. In addition... That language is no longer here, right? That specific language is no longer here, but the idea is still here because it was added back in in 2000, and it was not called in matter. But the key is that the term telephonic connection has to mean the same thing for all of these. And what's really important here is that it's at least one compres. We don't disagree on appeal that it has to be a circuit switch connection. But what does one compres connect to? It's got to have a compres. This is very similar, Your Honor, to when you call a 1-800 compres. All of us have done that. A lot of times we've been the first person on the compres, and we sit around for five minutes waiting for everybody to join. We clearly have a telephonic connection to the compres. We clearly also have a compres. Then when other people come in, people can talk to each other. Then when people start dropping off, they may end up in a situation where everybody has dropped off except for the last person. That person still has a telephonic connection. Explain how the third embodiment is covered by the claim. How the third embodiment is covered by the claim, the VOIP embodiment. The VOIP embodiment is covered by the claim because, as with the common passage of a voice system, we have switch 34 being told to make a connection, a circuit switch connection, to a regular telephone on a regular telephone network, and that connection is between the switch and the phone. So we have exactly what the claim requires, which is to establish a telephonic connection to at least one telephone device, to at least one conferee telephone device. The fact that we then, beyond the claim, add other conferees is perfectly fine. A good analogy for this, Your Honor, is to think of a car with a carburetor. The conference is the car. The conference is what's useful for people to talk to each other. The car is useful to get people from one place to another. But how does a telephone connect to a switch? Doesn't a telephone have to connect to a telephone? No, Your Honor. Yes and no, it depends on the context, and that's what's really important. When you call me on the regular telephone line, and you start to call not with a computer but with your own phone, yes, you connect through switches all the way to me. And that is a connection between two telephones, and when you hang up, the whole thing falls down. But when you have a conference call, whether it's our invention or whether it's a 1-800 call-in, you don't have a connection between two telephones. And the way you know that is that when the other person hangs up, you don't lose the whole conference. When the other person hangs up, you still have your connection to the conference. And so they're separate and independent, and the specification very specifically says that they're separate and independent, and specifically says it's Switch 34 that makes those connections. In all the embodiments, Switch 34 makes those connections. Under the control of a computer on the Internet. Okay, shall we save the rest of your time? Yes, thank you, Your Honor. Okay. Good morning, and may it please the Court, Daryl Nduri from Keckerin-Madness representing Comcast. Your Honors, the only issue on appeal is whether the district court properly interpreted the term between two devices, each of which is capable of serving as the endpoint to that connection. But you argue that a telephone device is anything that can terminate one end of a circuit-switched connection? It is anything that can hold one end of a circuit-switched connection. So under that construction, why isn't Media Gateway infringing? It does not hold an end of the connection. The connection passes through the Media Gateway to the Comcast subscriber who constitutes the other end of that telephonic connection. And it couldn't be considered a telephone device then as the endpoint? It is not a telephone device because it is not the endpoint of the connection. You cannot place a call to the Media Gateway. You place a call, the Comcast subscriber places a call to a subscriber in the PSTN. An end-to-end connection is established between those two telephones that passes through switches on the PSTN and passes through the Media Gateway. And that was the basis of the district court's entry of judgment of non-infringement. Caritas' professed confusion with respect to the meaning of a telephone device in the district court's construction I think can't really withstand scrutiny. The term device did come from a footnote in our Markman brief in which we explained at A1378 in the record that by telephone we included within that other devices that are the endpoints for a telephone call including fax machines and in some cases a conference bridge. The distinction between a conference bridge on the one hand and a switch on the other hand is that a switch cannot serve as the endpoint of a telephonic connection. Connections pass through switches. A telephone bridge can. When you dial into a 1-800 number and you are hearing music, that is a telephonic connection. The conference bridge in that example is acting as a telephone. It has a telephone number assigned to it. In your view, is this claim to be construed to require at least one telephone as one of the endpoint devices? Certainly Claim 33 does require that there be at least one telephone as one of the endpoints to the connection, yes. But the point is there must be a connection between two devices that are capable of sustaining that connection. It could be under the district court's construction a bridge. That issue was not only raised in our Markman brief, it was addressed in the expert declaration of Dr. Campbell, and it was discussed extensively at the hearing where there was lengthy discussion about the fact that one embodiment that is described in the Caritas specification could be implemented through the use of a conference bridge, in which case there would be distinct connections between each conferee and that bridge, which would then be serving as a phone. Or alternatively, if it were implemented by a switch, you would have a connection passing through that switch to the conferee on the other side. Caritas, in essence, is trying to restrict the scope of its specification to require that in all conferences there be a conference bridge, there be some point in the middle of the conference that terminates all the connections. One that's not supported by the specification, and Caritas' own expert, Dr. Foris, disagreed with that assertion. But two, Caritas has not proffered any argument as to why a connection should still not be required to be an end-to-end connection, as was suggested by the district court. I would like briefly to raise the issue of the VOIP embodiment that was added to the specification in 2000. I agree, Judge Prost, with your comment. Caritas explicitly requested a 1996 priority date in the proceedings below. It was required to do that because the specification relating to the implementation of the Comcast protocol predated Caritas' addition of a VOIP embodiment to its specification. And the district court correctly recognized that it was therefore not appropriate to base its own construction decision on that newly added material. I do want to point out that Caritas' expert repeatedly agreed, during his deposition and the record excerpts that are cited, with the proposition that a telephonic connection is an end-to-end connection, and that the connections that we are talking about here are not established until both of the individuals are on the line. And that really explains why the stipulated judgment of non-infringement here was appropriate. Unlike a situation where you might call into a conference bridge, be placed on hold, and listen to music while other participants are brought online, in which case there is a connection. In the example of the Comcast digital voice, you pick up a telephone and you dial a number, and no connection is established until someone on the other end of the line picks up the phone. It's a single connection, and when one individual hangs up the phone, the entire connection is broken down. Much as a typical connection in the PSTN requires both participants and is set up and broken down as a single connection. Would you elaborate on that? I didn't have the impression that if anyone in the conference disconnects that everything just ends. It depends on how the conference is established. The district court construed conference to include two people, so it would include an ordinary two-person telephone call as well as a multi-party conference. Well, of course, then if one hangs up, it's over. That's right. If there are two people on the phone... But that isn't what you said. If there are two people on the phone and there's a switch connecting them, when one person hangs up, the connection is terminated. That's true in the PSTN, and that's true in Comcast digital voice. A multi-party conference call can be implemented in two different ways. If there is simply a switch sitting in the middle that's simply mixing the voice signals, but it's not terminating the individual conferee's connections, then if one conferee hangs up, his connections to each of the other conferees are immediately terminated and severed. His connections, the one who hangs up. That's right. That isn't what you said. You said everything ends. All of the other conferees are cut off if one hangs up. I'm sorry, Your Honor. I meant that comment to be made in the context of a two-party call as an example of Comcast digital voice. You're absolutely correct that to the extent you have multiple participants in the conference and a switch sitting in the middle, that if one person hangs up, he's simply disconnecting himself from the conference. But what is the flaw then in the claim construction that you were aiming at? Well, in Kerry Tauss' proposed construction of a connection to a conference, it's not clear, first of all, what the conference in question is. To the extent that by conference they mean to suggest a conference bridge to which it would be possible to have such a connection, that that is encompassed within the district court's connection. There is an end-to-end connection between the conferee and the conference bridge. To the extent that the term conference is meant to encompass a switch, then it is incorrect because there is no such thing as a connection to a switch. And even in the example that we've been discussing of the three people connected to a switch, there are connections between the two telephones. But there is no connection to a switch. The switch cannot place a call, it cannot receive a call, it cannot terminate a connection. But their claims aren't limited? That is correct. Their claims are not limited to a switch. But the example of a conference bridge... I'm trying to understand what you're trying to tell us. If they're not limited to a switch, then what is your point? The claims are broad enough to encompass conferences set up either using a switch or using a conference bridge. In either case, there is an end-to-end connection, an end-to-end circuit switch connection in the KERITAS patent and in all the disclosure documents that are relevant here, that fits within the district course plan construction. So if the thing in the middle is a bridge, a telephone bridge, which is a specialized kind of telephone, there is a connection from the conferee to the bridge. If the thing that's sitting in the middle is a switch, there is a connection from the conferee through that switch to each of the other conferees. Can a telephone connection be through an IP network? No, not in the context of these claims. The district court construed the term telephonic connection to require a circuit switch connection, and that is not an issue on appeal. So the only issue on appeal is whether that telephonic connection must be an end-to-end connection, or whether a telephonic connection can be merely part of that end-to-end connection. What KERITAS is endeavoring to do is to read the term telephonic connection by saying that it applies to the path that exists between a conferee telephone device on the one hand and some intermediate piece of equipment in the telephone network that cannot terminate that connection, that doesn't hold the other end of that connection. They characterize it variously as a switch or as some other piece of equipment in the Comcast implementation. And your view is that that's not an endpoint? It is not an endpoint to the connection. And even your expert himself testified that an endpoint was necessary to a telephone. That's right. KERITAS' expert agreed that in order for there to be a connection, there must be two endpoints. It would be impossible to set up that connection, any such connection, without there being two endpoints. He agreed that in the example where there is a switch in the middle, there is no connection until both of the conferees have come online in order for that connection to be established. And again, the individual connection between two conferees is set up as a single connection and taken down as a single connection  Finally, let me just make clear that the district court changed our proposed construction from telephone to telephone device in order more accurately to capture this idea that the endpoint to the connection can be a physical telephone or can be a telephone bridge. And we cited record evidence that a telephone bridge is a specialized kind of telephone. It can have a telephone number assigned to it. It can, in some implementations, receive calls. Are you saying the district court was wrong? Did you take a cross-appeal? No, the district court's construction was absolutely correct. The district court construed the endpoint of the connection as a telephone device. It did so based upon our clarification that by telephone we meant not just a physical handset, but any telephone-like device that could turn into a fax machine or a conference bridge. You dial a 1-800 number, the conference bridge picks up. It is a telephone in that situation. One potential implementation of the Caritas embodiment could be rather than having that kind of dial-in conference bridge, to have a dial-out conference bridge where some piece of equipment similarly functioning as the endpoint of the connection would be used to place calls. In that example, you would have telephone connections from each of the conferees to that conference bridge. Any more questions? Thank you. Thank you, Your Honors. With respect to the statement that the district court changed telephone-to-telephone device based on this footnote, there's no evidence in the record of that. There's nothing in the opinion or the judgment about this footnote or about bridges or fax machines or modems. The footnote itself says we include other devices that are endpoints for a telephone call. And there's a real issue here about below, end-to-end meant conferee-to-conferee, not end-to-end of some piece of the call which is a connection, but end-to-end of the call. Can you explain your expert, Dr. Foris' explanation that there's an end-user in both events? When he was asked in a regular telephone call between two people, not according to the invention, are there two people involved? Yes, there are two phones, and there's an end-to-end connection. He absolutely said that, and we agree with that today. But in the invention, he said there are two connections from the switch out. In fact, he said that's the whole point. And this issue of end-to-end connection being conferee-to-conferee versus now some fudging of that is very important. There was a statement that said that the telephonic connection in the Comcast digital voice system went through the media gateway. We know that's not true, because we know that from the media gateway through that yellow cloud was all IP, and that's not a circuit-switched telephonic connection. That media gateway is an endpoint to a connection, but not to a phone. Is the specific conferee in your mind connected, and what is it connected to? The specific conferee is the PSTN telephone on the right side. It is connected through the switches to the media gateway, and the connection runs between the media gateway and the PSTN phone. That is the one, at least one telephone conferee. The rest of it is somebody else coming into the conference, whether it be one person or two persons or three persons. They could come in through, in the Comcast system, through VOIP or in the other embodiment in our patent. They could also come in by dialing in. That doesn't get the advantages for that conferee of the invention, which involved computer control, computer monitoring, being able to see who is on the call and off the call, etc. Yes, my time is over.